ADOPTION OF BETSY (and two companion cases[1]). No. 06-P-696. July 31, 2007. *Adoption,* Care and protection, Dispensing with parent's consent. *Minor,* Care and protection, Adoption. *Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption.

---

[1]Adoption of Eric and Adoption of Lucille. The children's names are pseudonyms.

The biological mother appeals from decrees finding her unfit and that the Department of Social Services' plan that her three children, Betsy, a daughter born in 2003, and a son and daughter, Eric and Lucille, born in 2004 (the twins), be adopted by the families with whom they were put in foster care following their births was in the children's best interests. The mother, with a family history of mental illness, has bipolar disorder, and her principal argument on appeal is that, contrary to the teaching of *Care & Protection of Bruce*, 44 Mass. App. Ct. 758, 763-764 (1998), and *Adoption of Abby*, 62 Mass. App. Ct. 816, 821, 826 (2005), the children have been taken from her because of her mental illness, not because the illness has resulted in harm to the children.

The difference between this case and those relied on by the mother is that here the record shows a plethora of maternal shortcomings that have threatened (as at the births of Betsy and Eric) or will threaten the well-being of the children. Her inability to see the needs of the children as separate from her own; her often bellicose resistance to suggestions, particularly by authority figures (such as doctors, nurses, emergency medical technicians, social workers, landlords, and police), however well intended; her seeming inability to modify counterproductive behaviors, such as her obsession with breast feeding, to the exclusion of other needs of the children, such as burping, diapering, and sleeping; her frequent run-ins with the law — all these justified the opinion of Dr. Virginia Merritt, which the judge adopted, that the mother should not be entrusted with care of the children unless a professional person should be in attendance, by which, the doctor emphasized, she meant twenty-four hours per day. The record in this case is voluminous, as are the judge's findings.

The mother attacks the judge's findings only in broad-brush fashion. Fifty-five of them are said to be long, speculative, disparate, vague, and not supported by a preponderance of the evidence, and thus "should be considered erroneous." The reason why appears as to only two of the findings. The finding that the mother has a lengthy adult criminal record is attacked on the basis that many of the charges were dismissed or resulted in not guilty verdicts. There is no contradiction; the judge made clear she was talking about charges, not convictions. The other is that the nurses at Brigham and Women's Hospital found the mother to be too irritable and extreme. The argument is that she had good reason to be irritable because (as the hospital record noted) she arrived suffering from "maternal exhaustion due to the three days of latent labor." The argument understates the irritability. During the stay, the mother's hostile behavior caused the hospital to station a nurse outside her room to monitor her behavior at all times. Once, when the mother was expressing her outrage in the nursery, the nurses moved all newborns out for fear of harm befalling them. Eventually the mother was relegated to seeing Betsy only in her room and only with supervision.

Independently, we have examined the judge's findings, which are all well supported in the voluminous record. Except as stated above, the mother does not seriously challenge the accuracy of the judge's findings.

The judge did not err in rejecting the mother's proposal of her friend as an alternative placement for the children. The friend was a middle-aged postal worker, a bachelor, with no experience in child rearing and no plans for child care while he was at work. The judge could properly conclude he was but a

Rescript Opinions.

front man for transferring custody of the children from the preadoptive homes in which they have been comfortably settled back to the mother. Nor did the judge err by not ordering postadoptive visitation. Such an order should only be made "where the evidence readily points to significant, existing bonds between the child[ren] and the biological parent, such that a court order abruptly disrupting that relationship would run counter to the child[ren]'s best interests." *Adoption of Greta*, 431 Mass. 577, 588 (2000), quoting from *Adoption of Vito*, 431 Mass. 550, 563 (2000). No such relationship exists in this case. Here, each of the three children has been in foster care from the time he or she left the hospital, and they do not have a bond with the mother.

*Decrees affirmed.*

*Deborah Sirotkin Butler* for the mother.

*Kari Kipf Horstmann* for Department of Social Services.

*Garry M. O'Brien* for the children.